## WILSON *v.* SHAW.

PANAMA CANAL; INJUNCTIONS; EQUITY.

1. The act of Congress of June 28, 1902, 32 Stat. at L. 481, chap. 1302, U. S. Comp. Stat. 1903, p. 431, authorizing $50,000,000 to be paid to the New Panama Canal Company for the acquisition of a strip of land across the Isthmus of Panama, in connection with the construction of the Panama canal, is constitutional.

2. The United States has the same right to construct a canal as it has to construct a highway, within territory over which it has exclusive jurisdiction; and such power is not necessarily derived from the constitutional authority to regulate commerce, but is the inherent right of a sovereign acting within its own domain and authorized to levy taxes for the general good and common welfare of the states; and it has a similar power to construct a canal over the Isthmus of Panama along the right of way acquired by it; such right of way being the equivalent of ownership of the soil, and giving an extent of control over the territory which constitutes the substance, if not the name, of sovereignty.

3. Courts of equity look at the substance, rather than at the form, of things.

4. Where the purpose to be subserved by an act of Congress, such as the Panama canal act, is a public purpose, the courts will not be swift to find defects in it.

No. 1532. Submitted April 17, 1905. Decided May 2, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill for an injunction against the Secretary of the Treasury.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in equity instituted in the supreme court of the District by the appellant, Warren B. Wilson, as complainant, alleging himself to be a citizen of the United States and of the State of Illinois, and the owner of property therein subject to taxation by the United States, to enjoin the payment by the Secretary of the Treasury of the $50,000,000 authorized by the act of Congress of June 28, 1902 (32 Stat. at L. 481, chap. 1302, U. S. Comp. Stat. 1903, p. 431), to be paid to the New Panama Canal Company of France, and for the acquisition of a strip of land across the Isthmus of Panama, in connection with the construction of the proposed interoceanic canal across that isthmus. The injunction is sought on the ground that the act of Congress is unconstitutional, and that the treaty between the United States and the Republic of Panama purporting to convey to the United States, the rights deemed necessary for the construction of the canal, is null and void, and actually conveys no such rights.

The bill of complaint sets forth the terms of the statute and of the treaty, but no facts not of public notoriety; and a recital of its allegations is therefore unnecessary. A demurrer to it was interposed on behalf of the Secretary of the Treasury; but there was no appearance for the Republic of Panama or for the New Panama Canal Company of France, and no attempt to issue any process against either. The demurrer was sustained and the bill was dismissed; and from the decree of dismissal the complainant has appealed to this court.

The appellant, Mr. Warren B. Wilson, appeared in proper person.

*Mr. Charles W. Russell,* Assistant Attorney General, and *Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

Undoubtedly it is the purpose of the parties to this cause, as it is their right, to seek the ultimate decision of the Supreme Court of the United States; and the decision of this court will be regarded by them as no more than a step in the progress of the litigation. Consequently, notwithstanding the vast interests involved and the questions of great magnitude raised by the complainant and most ably presented by him both in brief and oral argument, we deem it unnecessary to follow him in that argument, or to enter into any elaborate consideration of those questions. We will content ourselves with a brief statement of the general principles which we think should determine our decision in the case.

· We take it that, in general, the construction of a canal stands upon no different plane from that of a railroad or a turnpike or any ordinary public road, so far as it concerns the right of a State to construct any one or more of them. They are all equally public highways, although with different conditions and different limitations. They are all avenues of communication which it has always been held to be the peculiar province of the State to construct, although it has often found it more convenient to construct them by private corporations organized for the purpose than by its own direct effort. That any State of our Union may, within its own borders, construct such a highway in either one of the modes indicated, we presume is not judicially open to inquiry.

Neither can there be judicial question at this day of the lawful authority of the United States to construct such a highway, either road or canal, within the territory over which they have exclusive jurisdiction, such as the District of Columbia and the so-called territories of the United States. The United States authorized the construction of the great transcontinental lines of railroad through its own territory; and the lawful authority was not wanting to do the work themselves had it been deemed expedient. Similarly, if it had been deemed expedient at any time to construct a canal between the Mississippi river and the

Pacific ocean, and thus to bind the States of the Atlantic with those of the Pacific coast, we do not see how the lawful power could be denied to the United States to construct such a canal, either by the agency of an organized company or directly on its own account by its own employees, so far as the work lay within the territory over which it had exclusive jurisdiction. And such power need not be derived from the constitutional authority to regulate commerce between the States and with foreign nations, but would be the inherent right of a sovereign acting within its own domain, and authorized to levy taxes for the general good and the common welfare of all the States.

Now, when outside of our former domain and yet so situated as to be appropriate for the purpose, the United States have acquired yet other territory, and propose to construct through it a canal to connect the Pacific and the Atlantic States, and to facilitate the commerce of both with each other and with foreign nations, why should their lawful power so to do be deemed less than if they sought to construct a similar canal through New Mexico and Arizona to connect the waters of the Colorado with those of the Gulf of California? If we own the requisite land across the Isthmus of Panama, we fail to see wherein there would be any greater constitutional inhibition against the construction of a canal there, than there would be against a similar construction in Arizona or Alaska. The question, of course, is not one of expediency, about which men may well differ, and which it would be for Congress, and not for the courts, to determine, but one of lawful constitutional authority; and we see no reason, even under the strictest construction of the Federal Constitution, to doubt the lawful authority of the United States to open up a way of intercommunication within its own territory.

As already stated, the construction of highways is the special function, and even the duty, of the State; and that function cannot reasonably be denied to the United States in the places in which it is sovereign and has exclusive jurisdiction. In its sovereignty, in its exclusive jurisdiction, in its ultimate ownership of the soil, in its authority to levy taxes in order to pro-

vide for the general welfare, rather than in the authority vested in the Federal government to regulate commerce, do we find the lawful power of the United States to construct an interoceanic canal.

But it is argued that on the Isthmus of Panama we have acquired neither the sovereignty nor the ownership of the soil that would be proper for the construction of a ship canal across that strip of land. There is undoubtedly some question left by our treaty with the Republic of Panama as to our sovereignty over the so-called "Canal Zone;" and it may be that the ultimate ownership of the soil of that "Canal Zone" is not vested in the United States. But we have acquired a right of way, which for all practical purposes is the equivalent of ownership of the soil; and we have acquired such extent of control over the territory as to constitute the substance, if not the name, of sovereignty. The court has been invoked to intervene as a court of equity; and courts of equity look at the substance rather than the form of things. Moreover, the executive and legislative departments of the government, upon which the duty is devolved of negotiating treaties and enforcing them, have manifested their entire satisfaction with the treaty in question; and the courts should not be swift to find defects in it, since the purpose to be subserved is a public purpose almost exclusively within the cognizance of those two departments.

It follows in our opinion that the decree appealed from must be affirmed, with costs. And it is so ordered.      *Affirmed.*

An appeal to the Supreme Court of the United States was allowed May 12, 1905.